

# The Attorney General of Texas

March 14, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

Texas, Suite 700
Juston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Fred S. Brinkley, Jr.
Executive Director/Secretary
Texas State Board of Pharmacy
211 East 7th Street
Suite 1121
Austin, Texas    78701

Opinion No. JM-452

Re: Whether the Texas State Board of Pharmacy may license a foreign pharmacy graduate under certain circumstances

Dear Mr. Brinkley:

You advise us that the Foreign Pharmacy Graduate Examination Commission (FPGEC) of the National Association of Boards of Pharmacy offers the Foreign Pharmacy Graduate Equivalency Examination to foreign pharmacy graduates who seek educational equivalency certification as partial fulfillment of the eligibility requirements for licensure to practice pharmacy in the United States. You ask, in a situation in which the professional pharmacy degree of the college is not accredited by the American Council on Pharmaceutical Education, whether the Texas Pharmacy Act authorizes the Texas State Board of Pharmacy to license an individual who graduates from a college of pharmacy located outside the United States if the applicant obtains an FPGEC certification, fulfills other licensing requirements, and passes the licensing examination administered by the board. We conclude that the Texas Pharmacy Act neither prohibits nor requires the licensing of such persons by the Texas State Board of Pharmacy.

The Texas Pharmacy Act, article 4542a-1, V.T.C.S., provides, in pertinent part, as follows:

> Sec. 5.  In this Act, unless the context of its use clearly indicates otherwise:
>
> (1) 'A.C.P.E.' means the American Council on Pharmaceutical Education.
>
> . . . .
>
> (9) 'College of pharmacy' means a school, university, or college of pharmacy that satisfies the accreditation standards of A.C.P.E. as adopted by the board; or that has degree requirements

which meet the standards of accreditation set by
the board.

. . . .

Sec. 21. (a) To qualify for a license to
practice pharmacy, an applicant for licensing by
examination must submit to the board a license fee
as determined by the board and a completed appli-
cation on a form prescribed by the board with
satisfactory sworn evidence that he:

. . . .

(4) has graduated and received a professional
degree from an accredited college of pharmacy that
has been approved by the board; and

. . . .

Sec. 22. (a) To qualify for a license to
practice pharmacy by reciprocity, an applicant for
licensing must:

. . . .

(3) have graduated and received a professional
degree from an accredited college of pharmacy that
has been approved by the board;

. . . .

Sec. 26. (a) The board shall refuse to issue
a pharmacist license for failure to meet the
requirements of Section 21 or 22 of this Act.

The Rules of the Texas State Board of Pharmacy state that

The following are the educational and age
requirements each applicant must meet:

(1) have obtained a B.S. in pharmacy or a
Pharm.D. from a college of pharmacy accredited by
ACPE and meeting the requirements of the board;
and

(2) provide satisfactory evidence that the age
of 21 years has been obtained.

22 T.A.C. §283.3 (1982).

The issue is neither the residency nor nationality of an applicant but whether, under the Texas Pharmacy Act, persons who have completed a pharmacy education at a pharmacy school outside the United States may be licensed by the Texas State Board of Pharmacy [Board of Pharmacy].

The dominant consideration in construing statutes is legislative intent. The Texas Supreme Court recently stated that

> [n]o inflexible rule can be announced for the construction of statutes. However, the dominant rule to be observed is to give effect to the intention of the Legislature. Generally the intent and meaning is obtained primarily from the language of the statute. In arriving at the intent and purpose of the law, it is proper to consider the history of the subject matter involved, the end to be attained, the mischief to be remedied, and the purposes to be accomplished.

City of Sherman v. Public Utility Commission, 643 S.W.2d 681, 684 (Tex. 1983), quoting City of Coahoma v. Public Utility Commission, 626 S.W.2d 488, 490 (Tex. 1981) and Magnolia Petroleum Co. v. Walker, 83 S.W.2d 929 (Tex. 1935).

The Texas Pharmacy Act was enacted by House Bill No. 1628, Sixty-seventh Legislature, in 1981 to replace article 4542a, V.T.C.S., and to continue the existence and operation of the Board of Pharmacy as part of the Texas Sunset Commission review process provided by article 5429k, V.T.C.S. (now recodified as chapter 325, Government Code). The bill analysis of House Bill No. 1628, prepared for the House Committee on Government Organization, on file with the Texas Legislative Reference Library, explains that the term "college of pharmacy" defined in section 5(9) of the bill appears in section 9(a) of the replaced pharmacy act, but that the term was not defined in the prior act. The bill analysis describes section 21(a) as "Section 9(a) of the current act" (art. 4542a) and section 22(a) as "Section 9(c) of the current act." See Acts 1979, 66th Leg., ch. 837, at 2202. Section 9(a) of article 4542a provided that an applicant seeking to take the examination given by the Board of Pharmacy shall present satisfactory evidence "that he has attended and graduated from a reputable university, school, or college of pharmacy which meets the requirements of the Board." (Emphasis added). Section 9(c) of article 4542a authorized licensing by reciprocity for applicants who furnish proof that they are registered as pharmacists in a state whose board "in its examination required the same general degree of fitness required by this State."

The Texas State Board of Pharmacy Staff Report to the Sunset Advisory Commission, dated June 19, 1980, states that

> The licensing standards for pharmacists can be broken down into three basic components: education, experience and examination. With regard to education, the statute requires at least an undergraduate degree from a board-approved school of pharmacy. (Emphasis added).

The Pharmacy Board Report to the Sunset Commission suggested modifications to the Pharmacy Board statute but contained no indication that foreign pharmacy schools presented a problem and no suggested legislation on that subject. The Sunset Commission Report on the Board of Pharmacy did not recommend any statutory changes relating to educational requirements.

We find no indication that the legislature intended the Texas Pharmacy Act enacted in 1931, to deny to the Texas Board of Pharmacy the discretion to approve, for licensing purposes, schools of pharmacy that meet standards set by the board or to limit schools that are eligible for approval to those schools of pharmacy that satisfy accreditation standards of A.C.P.E. The legislature defined a "college of pharmacy" to mean a school of pharmacy that satisfies the accreditation standards of A.C.P.E. as adopted by the board or that has degree requirements which meet the standards of accreditation set by the board.

One of the fundamental rules of statutory construction is the rule that words in common use, when contained in a statute, will be read according to their natural, ordinary, and popular meaning, unless a contrary intention is clearly apparent from the context. See National Life Co. v. Stegall, 169 S.W.2d 155, 157 (Tex. 1943); Attorney General Opinion WW-1271 (1962). A dictionary may be consulted to ascertain the meaning of a word. See Board of Insurance Commissioners v. Duncan, 174 S.W.2d 326, 328 (Tex. Civ. App. - Amarillo 1943, writ ref'd); Attorney General Opinion H-1277 (1978). Black's Law Dictionary 19 (5th ed. 1979), defines "accredit" to mean "to recognize as having sufficient academic standards to qualify graduates for higher education or for professional practice." In Ballentine's Law Dictionary 14 (3rd ed. 1969), "accredit" means "to recognize as worthy of merit or rank, as to accredit a college."

The effect of Rule 293.3, as presently adopted by the Board of Pharmacy, is that only colleges of pharmacy in the United States meet the board's educational requirements because foreign colleges of pharmacy are not accredited by A.C.P.E. The Board of Pharmacy is authorized to utilize the A.C.P.E. and its standards to assist the board in determining the professional degree programs of colleges of

pharmacy that meet the educational requirements of the board for the purpose of licensure of pharmacists. We believe, however, that the legislature did not intend the Texas Pharmacy Act to preclude the board from utilizing other methods and tests which the board deems appropriate for determining the colleges of pharmacy with standards that merit board approval for the purpose of licensing pharmacists.

The state has the power to regulate licensed professions. See Texas State Board of Public Accountancy v. Fulcher, 515 S.W.2d 950 (Tex. Civ. App. - Corpus Christi 1974, writ ref'd n.r.e.). The legislature may delegate part of that authority by creating licensing agencies to make rules and regulations consistent with the purpose of their respective enabling acts and to grant, refuse, or revoke licenses. In so doing, the legislature may limit a licensing board's authority. See Francisco v. Board of Dental Examiners, 149 S.W.2d 619, 621 (Tex. Civ. App. - Austin 1941, writ ref'd).

We believe that, if the legislature intended the Texas Pharmacy Act to prohibit the licensure of graduates of all schools located outside the United States, it expressly would have provided such prohibitions or limitations. We conclude that the Texas Pharmacy Act authorizes the Board of Pharmacy to decide whether FPGEC certification of a foreign pharmacy graduate constitutes an appropriate method or test for determining whether the degree requirements of a school located outside the United States meet the standards of accreditation set by the board. Cf. V.T.C.S. art. 4495b, §5.04 (individual who has been student of a foreign medical school is eligible for licensure to practice medicine in this state if he meets specific requirements); V.T.C.S. art. 4544, §2 (Texas State Board of Dental Examiners may provide in rules and regulations the procedures and requirements for graduates of foreign dental schools to become licensed to practice dentistry); V.T.C.S. art. 4518, §§1, 3 (Board of Nurse Examiners shall accredit schools of nursing and educational programs that meet its requirements and standards and every applicant for registration must complete an accredited program of professional nursing education); V.T.C.S. art. 4552-3.02 (applicant for license to practice optometry must graduate from a reputable university or college of optometry that meets the requirements of the Texas Optometry Board).

Second, you also ask whether the Board of Pharmacy may require a foreign pharmacy graduate who has obtained an FPGEC certification to pass an oral communications skill examination to determine such a person's oral communication ability. It is our opinion that the Board of Pharmacy does not have authority to require an applicant for licensing to pass an oral communications skill examination in order to qualify for a license.

It is well established that an administrative agency has only those powers expressly granted to it by statute or necessarily implied

from the statutory authority conferred or duties imposed. See City of Sherman v. Public Utility Commission, 643 S.W.2d 681, 686 (Tex. 1983); Stauffer v. City of San Antonio, 344 S.W.2d 158 (Tex. 1961).

Section 21 of the Texas Pharmacy Act expressly provides qualifications for licensing by examination. The legislature specified qualifications relating to age, moral character, internship or other experience, education, and the passage of "the examination required by the board." Sec. 21(a). The examination shall be prepared to measure the competence of the applicant to engage in the practice of pharmacy and the board may employ and cooperate with any organization or consultant, including a national testing service, in the preparation and grading of an appropriate examination. Sec. 21(d), (e). Section 21(f) directs that each applicant for licensing shall obtain practical experience in the practice of pharmacy. Under section 21(g), the board shall establish standards for internship or any other program necessary to qualify an applicant for the licensing examination and shall determine the necessary qualifications for any preceptors used in an internship or other program.

Rules and regulations adopted by Texas administrative agencies may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with statutory provisions. See Bexar County Bail Bond Board v. Deckard, 604 S.W.2d 214, 216-17 (Tex. Civ. App. - San Antonio 1980, no writ) (in absence of statutory language indicating legislative intent that a board have the power to add to licensing qualifications enumerated by the legislature, it is not within the power of a board to impose qualifications that add to those expressed in the statute).

We find nothing in the Texas Pharmacy Act which suggests that oral communication ability is a qualification for licensure or would constitute express or implied authority to the board to require passage of an oral communication skills examination. You advise us that the Foreign Pharmacy Graduate Equivalency Examination is given only in English and that a requirement for FPGEC certification is documentation that the person has passed the Test of English as a Foreign Language (TOEFL) examination. Oral communication skill is not necessarily the same as English language skill, but it appears that a person's English language skill will have received some measure of testing when he obtains an FPGEC certification.

The legislature has given the Board of Pharmacy broad power to approve the educational standards of the colleges of pharmacy which the board deems necessary for the purpose of licensing pharmacists in this state. While it is our opinion that oral communication skill as such is not a qualification for licensure, we believe the Board of Pharmacy may require an oral communication skills examination to be given uniformly to all graduates of the colleges of pharmacy, if the

board needs to ascertain their skill for the purpose of evaluating the quality of education acquired by the graduates.

### S U M M A R Y

The Texas Pharmacy Act neither prohibits nor requires the Texas State Board of Pharmacy to license persons who graduate from colleges of pharmacy located outside the United States. The Texas Board of Pharmacy has discretion to approve colleges of pharmacy for licensing purposes and may utilize accreditation or certification by agencies it deems appropriate to assist the board in determining the colleges of pharmacy that meet standards set by the board. The Texas Board of Pharmacy has not been granted express or implied authority to add verbal communication ability to the qualifications for a license to practice pharmacy.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General